**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**JONAS MILLER,**

      **Petitioner,**                             **CASE NO. 2:09-CV-00720
                                                     JUDGE WATSON
v.                                                  MAGISTRATE JUDGE ABEL**

**WARDEN, NOBLE CORRECTIONAL
INSTITUTION,**

      **Respondent.**

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. This matter is before the Court on the instant petition, respondent's return of writ, petitioner's traverse, and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

## FACTS and PROCEDURAL HISTORY

The Ohio Fourth District Court of Appeals summarized the facts and procedural history of this case as follows:

> The Washington County Grand Jury indicted Miller for eight counts of burglary, three counts of breaking and entering, seven counts of grand theft, one count of receiving stolen property, one count of conspiring to engage in a pattern of corrupt activity, and one count of engaging in a pattern of corrupt activity. These alleged crimes took place between September and December of 2005. Eventually, Miller pled guilty to four of the charges, i.e., breaking and entering, burglary, receiving stolen property, and conspiring to engage in a pattern of corrupt activity. The state dismissed the remaining charges.
>
> The breaking and entering offense stemmed from an incident at a Dairy Queen. One of its employees, Keely Jaegar, told Miller and his brother, Wesley Miller, about the store's closing procedures, the location of the cash drawer, and the lack of any security cameras. Later, she drove them to the Dairy Queen, parking a short distance

away. The brothers went to the store, broke in using a crowbar, and stole two to three thousand dollars.

The burglary offense happened a few days later and involved the Rushing residence. Because Mr. Rushing was a minister, the Miller brothers determined that he went to church services on Sunday evening. Outside the Rushing home, they used a cell phone to call inside; they believed if no one answered, then no one was present. No one answered the phone; so, they went inside and stole jewelry.

Later, police recovered this jewelry along with other jewelry stolen from other residences. Police found additional stolen property in a car belonging to one of the brothers and in a hotel room where they stayed. They used the fruits of these crimes to support themselves and pay for their hotel room. All totaled, the police investigation showed that Miller was involved in 11 thefts.

At the sentencing hearing, the state read the pertinent facts of the investigation into the record. The court then asked Miller if the facts were true. Miller admitted that everything was true except that the jewelry found by the police in his vehicle was not in a shoebox. Miller also contended that they took $2,000 from the Dairy Queen, not $3,000. However, he admitted that he stole jewelry from various residences, instead of just one residence.

In sentencing Miller, the trial court indicated that it considered the statutory guidelines as required by R.C. 2929.11 and 2929.12, along with the principles and purposes of sentencing.

With regard to the seriousness of Miller's offenses, the court stated that Miller "caused economic harm to numerous victims * * * committed the offense for hire or as a part of an organized criminal activity."

With regard to recidivism factors, the court first listed twenty-six prior adult and juvenile criminal convictions. The court found that Miller "demonstrated a pattern of drug or alcohol abuse related to the offense and refuses to acknowledge the pattern or refuses treatment." The court next found that Miller "at the time of the offense was released on bail or awaiting sentencing, under another non-prison sanction, or under the control after being released from prison." The court further found that Miller "has failed to respond to community control in the past."

2

> Finally, the court found that its sentence was "reasonably calculated to achieve" the overriding purposes of felony sentencing. The court then imposed a twelve-year prison term as follows: one year for the breaking and entering, three years for the burglary, one year for the receiving stolen property, and seven years for the conspiring to engage in a pattern of corrupt activity. The court ordered the sentences to run consecutive to each other.
>
> Miller appeals and raises the following two assignments of error: I. "The trial court erred and abused its discretion when it ordered Mr. Miller to serve a twelve-year prison term. This error deprived Mr. Miller of his Fifth and Fourteenth Amendment due process rights." II. "The trial court erred when it ordered Mr. Miller to serve nonminimun, maximum, and consecutive prison terms. This error deprived Mr. Miller of his Sixth Amendment right to trial by jury."

*State v. Miller*, No. 07CA1, 2008 WL 651052, at *1-2 (Ohio App. 4th Dist. March 4, 2008). On March 4, 2008, the appellate court affirmed the trial court's judgment. *Id*. On August 6, 2008, the Ohio Supreme Court dismissed petitioner's subsequent appeal. State v. Miller, 119 Ohio St.3d 1410 (2008).

On June 3, 2008, petitioner filed an application to reopen the appeal pursuant to Ohio Appellate Rule 26(B). *Exhibit 12 to Return of Writ*. On June 17, 2008, the appellate court denied the application as untimely. *Exhibit 13 to Return of Writ.*[1] On October 15, 2008, the Ohio Supreme Court dismissed petitioner's subsequent appeal. *State v. Miller*, 119 Ohio St.3d 1489 (2008).

On August 13, 2009, petitioner filed the instant pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. He alleges that he is in the custody of the respondent in violation of the Constitution of the United States based upon the following grounds:

> 1. The severance remedy set forth in *State v. Foster*, 109 Ohio St.3d 1, violated Petitioner's right to due process of law and the protection

---

[1] The appellate court rejected petitioner's motion for reconsideration of its decision. *See Exhibits 14, 15 to Return of Writ.*

3

>against Ex Post Facto law as guaranteed by the Due Process and Ex Post Facto Clauses of the United States Constitution.
>
>2. Petitioner was denied the effective assistance of counsel, as guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution when trial and appellate counsel failed to raise meritorious challenges to Petitioner's sentence.
>
>3. Petitioner's rights to due process was violated when the trial court permitted the use of a tattoo as evidence when sentencing the defendant violating petitioner's rights to due process of law in violation of the Fifth and Fourteenth Amendments to the United States Constitution.
>
>4. Trial court deprived Petitioner of his 5th Amendment right to due process of law when sentencing Petitioner to 7 years on a fatally defective indictment.

It is the position of the respondent that claim one is without merit and that the remainder of petitioner's claims are procedurally defaulted.

## CLAIM ONE

In claim one, petitioner asserts that the trial court's application of *State v. Foster*, 109 Ohio St.3d 1 (2006)(excising unconstitutional fact-finding provisions of Ohio's sentencing statutes), in imposing maximum, non-minimum, consecutive terms of incarceration violated his right to due process and the Ex Post Facto Clause. The state appellate court rejected this claim as follows:

>Miller next contends that the trial court committed plain error when it sentenced him to a non-minimum, maximum, and consecutive prison term. The crux of his argument is that the trial court improperly sentenced him to more than the minimum term of imprisonment when it sentenced him in accordance with the Supreme Court of Ohio's decision in *Foster*. In short, Miller asserts that the sentencing statutes create a presumption in favor of minimum sentences for offenders who have not previously served a prison term, and that the court's holding in *Foster* violates the Due Process and Ex Post Facto Clauses of the United States Constitution by retroactively eliminating that presumption.

4

We first note that Miller did not raise this argument at his sentencing hearing on November 28, 2006, even though the Supreme Court of Ohio decided *Foster* on February 27, 2006. *State v. Payne,* 114 Ohio St.3d 502, 2007-Ohio-4642 (When a defendant is sentenced after *Blakely v. Washington* (2004), 542 U .S. 296, he forfeits his right to raise judicial fact-finding enhancement issues on appeal unless he objects at sentencing or he can show plain error.). Pursuant to Crim.R. 52(B), we may notice plain errors or defects affecting substantial rights, even though a defendant did not bring them to the trial court's attention. A reviewing court should use its discretion under Crim.R. 52(B) to notice plain error "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long* (1978), 53 Ohio St.2d 91, paragraph three of the syllabus.

In *Foster,* the Ohio Supreme Court considered the constitutionality of Ohio's sentencing statutes in light of the United States Supreme Court's holdings in *Blakely* and *Apprendi v. New Jersey* (2000), 530 U.S. 466. The court found that, under *Blakely* and *Apprendi,* R.C. 2929.14(B), R.C. 2929.14(E)(4) and R.C. 2929.19(B)(2), as well as other sections of the Ohio Revised Code, violated the Sixth Amendment to the extent that they required judicial fact finding. *Foster* at paragraphs one through seven of the syllabus. In constructing a remedy, the *Foster* court excised the provisions it found to offend the Constitution, granting trial court judges full discretion to impose sentences within the ranges prescribed by statute. *Id.* The court then held that the cases before it "and those pending on direct review must be remanded to trial courts for new sentencing hearings not inconsistent" with the court's opinion. *Id.* at ¶ 104. Consistent with the United States Supreme Court's holding in *United States v. Booker* (2005), 543 U.S. 220, the *Foster* court only applied its holding retroactively to cases that were then pending on direct review or not yet final. *Foster* at ¶ 106.

In *State v. Grimes,* Washington App. No. 04CA17, 2006-Ohio-6360, this court considered and rejected a Due Process and Ex Post Facto challenge to a sentence imposed in accordance with the Ohio Supreme Court's holding in *Foster.* There, we agreed with the observations of the Ninth and Second Districts, which rejected such challenges outright. In doing so, those courts expressed that "it is unlikely that the Ohio Supreme Court would have directed lower level courts to violate the Constitution and, in any event, [the district courts of appeal] are bound by Ohio Supreme Court directives." *Id.* at ¶ 8, citing *State v. Hildreth,* Lorain App. No. 06CA8879, 2006-

5

>Ohio-5058, at ¶ 10; *State v. Durbin,* Greene App. No.2005-CA-134, 2006-Ohio-5125, at ¶¶ 41-42.
>
>In finding that the Ohio Supreme Court's remedy in *Foster* does not violate the Due Process or Ex Post Facto clauses of the United States Constitution, we also expressed our approval of the reasoning set forth by the Third District in *State v. McGhee,* Shelby App. No. 17-06-05, 2006-Ohio-5162. *Grimes* at ¶ 9, citing with approval *McGhee* at ¶¶ 11 & 13-20. Because the range of prison terms for the defendant's offense remained the same both before and after *Foster,* we concluded, "[i]t is difficult to understand how appellant could maintain that an enlargement of the criminal statute occurred, generally, or available punishments, in particular." Id at ¶ 10. Further, we noted that the appellant did not attempt to explain how he would have acted differently had he known that the Ohio Supreme Court would strike down parts of R.C. 2929.14. *Id.* Accordingly, we found that the court did not err in imposing the maximum sentence for the offense. *Id.* at ¶ 11. Based upon our holding in *Grimes,* we find that the trial court did not err in imposing a non-minimum, maximum, and consecutive sentence for Miller's four offenses.
>
>Therefore, we find that the trial court did not commit any error, let alone plain error, when it sentenced Miller.

*State v. Miller*, No. 07CA1, 2008 WL 651052, at *4-6. The factual findings of the state appellate

court are presumed to be correct. 28 U.S.C. § 2254(e)(1) provides:

>In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Further, a federal habeas court may not grant relief unless the state court's decision was contrary to or an unreasonable application of clearly established federal law, or based on an unreasonable determination of the facts in light of the evidence that was presented. 28 U.S.C. § 2254(d) provides:

>An application for a writ of habeas corpus on behalf of a

> person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Court of Appeals for the Sixth Circuit has summarized this standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court on materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from the Supreme Court's decisions but unreasonably applies it to the facts of the petitioner's case.

*Boykin v. Webb,* 541 F.3d 638, 642 (6th Cir.2008) (quoting *Williams v. Taylor,* 529 U.S. 362 (2000)).  Petitioner has failed to meet this standard here.

In *Hooks v. Sheets,* 603 F.3d 316 (6th Cir. April 27, 2010), the United States Court of Appeals for the Sixth Circuit rejected the argument now presented by petitioner, at least as it applies to imposition of consecutive terms of incarceration:

> The Ex Post Facto Clause prohibits a state from passing a law that (1) criminalizes an action done before the law was passed, which was innocent when done, (2) " 'aggravates a crime, or makes it greater than it was, when committed,' " (3) " 'changes the punishment' " to inflict greater punishment than the law provided when the crime was committed, or (4) " 'alters the legal rules of evidence' " so that less or different testimony is required than at the time the offense was committed. *Rogers v. Tennessee,* 532 U.S. 451, 456, 121 S.Ct. 1693,

149 L.Ed.2d 697 (2001) (quoting *Calder v. Bull,* 3 U.S. 386, 390, 3 Dall. 386, 1 L.Ed. 648 (1798)). The Ex Post Facto Clause, however, provides by its terms that it is applicable only to acts of the Legislature, and " 'does not of its own force apply to the Judicial Branch of government.' " *Id.* (quoting *Marks v. United States,* 430 U.S. 188, 191, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977)). Nevertheless, the "limitations on ex post facto judicial decisionmaking are inherent in the notion of due process." *Id.* Consequently, the principles of the Ex Post Facto Clause apply to the courts through the Due Process Clause. *See id.* at 457. Because these principles are viewed through the lens of due process in the judicial context, the constitutionality of judicial action turns on the traditional due process principles of "notice, foreseeability, and, in particular, the right to fair warning," rather than the specific prescriptions of the Ex Post Facto Clause. *Id.* at 458-59.

A state's statutory scheme does not violate the Sixth Amendment simply because it constrains the ability of courts to impose consecutive sentences to situations in which the court has found specific facts. *Oregon v. Ice,* ---U.S. ----, ----, 129 S.Ct. 711, 714-15, 172 L.Ed.2d 517 (2009). Instead, a state may allow courts unfettered discretion to impose consecutive sentences or it may limit that authority without violating the Sixth Amendment. *Id.* At the time Hooks committed his crimes, Ohio permitted the court to impose consecutive rather than concurrent sentences if it found particular facts, *see* ORC § 2929.14(E)(4), and explained its "reasons for imposing the consecutive sentences," ORC § 2929.19(B)(2)(c). The Ohio Supreme Court nevertheless determined that these statutory provisions violated *Blakely* because they allowed the imposition of longer sentences-consecutive sentences-based upon judicial factfinding. *Foster,* 845 N.E.2d at 491.

Regardless of the court's determination in *Foster,* the maximum sentence to which Hooks was constitutionally subject contemplated consecutive sentences. Hooks would have the court calculate his maximum sentence as being imposed concurrently based solely on the facts found by a jury at the time of sentencing, because he argues that this calculation is mandated by *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). However, *Apprendi* does not limit the calculation of Hooks's potential sentence to concurrent sentences when the judicial fact-finding here is allowed under *Ice.* Thus, Hooks was initially and constitutionally subject to consecutive sentences according to the "guided discretion" of the court. *See Foster,* 845 N.E.2d at 495. Moreover, Hooks was always

> aware of the potential for consecutive sentences. On re-sentencing post *Foster* he remained subject to consecutive sentences within the discretion of the court. Since Hooks was *always* subject to consecutive rather than concurrent sentences in the discretion of the trial court, his re-sentencing under *Foster* did not raise ex post facto or due process concerns. We need not reach the broader question of whether re-sentencing under *Foster* ever violates the Due Process or Ex Post Facto Clauses because *Foster's* application in Hooks's case does not do so.

*Id.,* at 320-21. Further, petitioner's argument has been repeatedly rejected by state and federal courts, including this Court. *Smith v. Brunsman,* 626 F.Supp.2d 786, 793-95 (S.D. Ohio 2009).

Petitioner faced the same sentencing range both prior to and after *Foster*. His sentence violated neither the Due Process or Ex Post Facto Clause.

Claim one is without merit.

## PROCEDURAL DEFAULT: CLAIMS TWO, THREE AND FOUR

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required fairly to present those claims to the highest court of the state for consideration. 28 U.S.C. §2254(b), (c). If he fails to do so, but still has an avenue open to him by which he may present the claims, his petition is subject to dismissal for failure to exhaust state remedies. *Id.; Anderson v. Harless*, 459 U.S. 4, 6 (1982) ( per curiam; *Picard v. Connor*, 404 U.S. 270, 275-76 (1971). If, because of a procedural default, the petitioner can no longer present his claims to a state court, he has also waived them for purposes of federal habeas review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error. *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle v. Isaac*, 456 U.S. 107, 129 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is precluded by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir.1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id*. Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id*. Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim. *Id*. Finally, if the Court has determined that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner is required to demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error. *Id*. This "cause and prejudice" analysis also applies to failure to raise or preserve issues for review at the appellate level. *Leroy v. Marshall,* 757 F.2d 94 (6th Cir.1985).

In claim three, petitioner asserts that he was denied a fair trial because the trial court permitted use of a tattoo as evidence in sentencing.  In claim four, petitioner asserts that he was denied due process because he was sentenced on a fatally defective indictment.  Both of these claims are readily apparent from the face of the record, and should have been raised on direct appeal, but were not.  Further, petitioner now may no longer present such claims to the state courts under Ohio's doctrine of *res judicata*.  State v. Cole, 2 Ohio St.3d 112 (1982); *State v. Ishmail*, 67 Ohio St.2d 16 (1981); *State v. Perry*, 10 Ohio St.2d 175 (1967). The state courts were never given the opportunity to enforce the procedural rule at issue due to the nature of petitioner's procedural default. The Court therefore deems the first and second parts of *Maupin* to have been met.

Further, the United States Court of Appeals for the Sixth Circuit has consistently held that Ohio's doctrine of *res judicata, i.e.*, the *Perry* rule, is an adequate ground for denying federal habeas relief. *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir.2006); *Coleman v. Mitchell*, 268 F.3d 417, 427-29 (6th Cir.2001); *Seymour v. Walker*, 224 F.3d 542, 555 (6th Cir.2000); *Byrd v. Collins*, 209 F.3d 486, 521-22 (6th Cir.2000); *Norris v. Schotten,* 146 F.3d 314, 332 (6th Cir.1998). The doctrine of *res judicata* is stated in unmistakable terms in countless Ohio decisions, and Ohio courts have consistently refused, in reliance on that doctrine, to review the merits of claims. *See State v. Cole, supra; State v. Ishmail, supra*. Further, the doctrine of *res judicata* serves the state's interest in finality and in ensuring that claims are adjudicated at the earliest possible opportunity. With respect to the independence prong, the Court concludes that *res judicata* does not rely on or otherwise implicate federal law. The third part of the *Maupin* test has been met.

As cause for his procedural default, and in claim two of this habeas corpus petition, petitioner asserts the ineffective assistance of appellate counsel; however, that claim likewise is procedurally defaulted.  The state appellate court explicitly refused to address the merits of petitioner's Rule 26(B) application as untimely:

> Here, we filed our decision on March 4, 2008.  Appellant did not file his application to reopen until June 4, 2008 – one day beyond the 90-day period provided in App.R. 26(B).  Accordingly, before we can consider the merits of appellant's application, we must first determine whether he has demonstrated that good cause exists to excuse his untimely filing.
>
> \*\*\*
>
> Appellant has not provided any explanation as to why he filed his application to reopen beyond the time allowed.  Therefore, we have no way to determine whether he was justified in doing so.

11

*Exhibit 13 to Return of Writ*.[2]  Further, the United States Court of Appeals for the Sixth Circuit has

---

[2]  The appellate court denied petitioner's motion for reconsideration in relevant part as follows:

> Appellant, Jonas Miller, has filed a motion asking this court to reconsider our June 17, 2008 entry denying his application to reopen his appeal because he did not file it within the time allowed.  For the reasons that follow, appellant's application is DENIED.
>
> \*\*\*
>
> Appellant has not called to this court's attention a substantive error in our judgment, or raised an issue that was either not considered or fully considered when it should have been.  Appellant correctly notes that we said in our entry that he was required to file his application to reopen on or before June 4, 2008, and that he filed it one day late.  Appellant now argues that because he filed the application on June 3, 2008, the application was timely.
>
> We filed our decision on March 4, 2008, making appellant's application to reopen due on or before June 2, 2008.  Appellant did not file his application until June 3, 2008, one day late.  As a result, even though we incorrectly noted that the 90th day was June 4, 2008, when it actually was June 2, 2008, the result is still the same: appellant's application to reopen was untimely.

*Exhibit 15 to Return of Writ*.

12

held that Ohio's enforcement of the good cause provision of Ohio's Rule 26(B) constitutes and adequate and independent state ground to preclude habeas corpus review:

> [A] petitioner's failure to comply with Rule 26(B) is an "adequate and independent" state ground on which the state can rely to foreclose review of a petitioner's federal claims. In *Fautenberry v. Mitchell,* we held that "the timeliness requirements in [Rule] 26(B) ... are an actually enforced, adequate and independent state ground upon which the Ohio courts consistently refuse to address ineffective assistance of appellate counsel claims." 515 F.3d 614, 640 (6th Cir.2008). *See also Tolliver v. Sheets,* 594 F.3d 900, 928 n. 1 (6th Cir.2010) ("[w]e have repeatedly concluded that Rule 26(B) was both 'firmly established' and 'regularly followed' as applied in non-capital cases [since] 1998"); *Wickline v. Mitchell,* 319 F.3d 813, 823 (6th Cir.2003) (finding that the petitioner's ineffective assistance of appellate counsel claims were procedurally defaulted because he failed to comply with Rule 26(B)); *Coleman v. Mitchell,* 244 F.3d 533, 540 (6th Cir.2001) (finding the petitioner's claim to be procedurally defaulted and rejecting the petitioner's argument that Rule 26(B) is not a firmly established and regularly followed procedural rule). In *Monzo v. Edwards,* 281 F.3d 568, 578 (6th Cir.2002), we rejected the petitioner's argument that there is no uniformity in the application of the good cause requirement, finding that "[o]ur review of Ohio law leads us to conclude that there was sufficient guidance as to what would not constitute good cause [under Rule 26(B) ] at the time the rule was applied." *See also Parker v. Bagley,* 543 F.3d 859, 862 (6th Cir.2008) (reaffirming the holding in *Monzo* that the timeliness and good cause requirements of Rule 26(B) have been "firmly established and regularly followed" in non-capital cases in Ohio); *Scuba v. Brigano,* 527 F.3d 479, 488 (6th Cir.2007) (same).

*Wilson v. Hurley*, No. 08-4538, 2010 WL 2587942, at *5 (6th Cir. June 28, 2010). Further, petitioner has failed to establish cause for this procedural default. Therefore, the ineffective assistance of counsel cannot constitute cause for the procedural default of claims one and two. *Edwards v.*

13

*Carpenter*, 529 U.S. 446, 452-53 (2000).

Beyond the four-part *Maupin* analysis, this Court is required to consider whether this is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. at 491; *see also Sawyer v. Whitley*, 505 U.S. 333. After review of the record, the Court does not deem this to be such a case.

**WHEREUPON**, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

If any party objects to this *Report and Recommendation,* that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability

should issue.

                                                                        s/Mark R. Abel
                                                                        United States Magistrate Judge